**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


JOSÉ L. FRANCE-BEY,          )
                                   )
               Plaintiff,       )
                                   )
               v.               )         1:17cv241
                                   )
KENNY HOLBROOK, et al.,    )
                                   )
               Defendants.     )


## MEMORANDUM OPINION, RECOMMENDATION, AND ORDER OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on the "Motion for Rule 56(f)" (Docket Entry 71) (the "Discovery Motion")[1] filed by José L. France-Bey (the "Plaintiff"), Plaintiff's motion for reconsideration (Docket Entry 79) (the "Reconsideration Motion"), Plaintiff's "Motion for Eighth Amendment Violation with Medical Records from Hugh Chatham Memorial Hospital (Elkin, NC 28621)" (Docket Entry 89) (at times, the "Eighth Amendment Motion"), "Defendants' Motion to Strike Plaintiff's Rule 26(b)(1) Motion for Release of Surveillance Video, Rule 56(f) Motion, Plaintiff's First Set of Interrogatories, and Request for Production of Documents" (Docket Entry 81) (the "First Strike Motion"), "Defendants' Motion to Strike Plaintiff's Motion for Eighth Amendment Violation with Medical Records from Hugh Chatham Memorial Hospital" (Docket Entry 90) (the "Second Strike Motion"), the "Motion to Seal Memorandum of

---

    1 For legibility reasons, this Opinion omits all-cap font in all quotations from the parties' materials.

Defendants in Support of Summary Judgment" (Docket Entry 64) (the "First Sealing Motion") filed by Kenny Holbrook, Jason White, Travis Bowman, and Brad Cook (collectively, the "Defendants"), Defendants' "Motion to Seal Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment and Accompanying Affidavits" (Docket Entry 85) (the "Second Sealing Motion"), and the "Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 of Kenny Holbrook, Jason White, Travis Bowman, and Brad Cook" (Docket Entry 61) (the "Summary Judgment Motion"). For the reasons that follow, the Court (1) will deny the First Motion to Strike, the Second Motion to Strike (collectively, the "Motions to Strike"), the Discovery Motion, the Reconsideration Motion, the Eighth Amendment Motion, the First Sealing Motion, and the Second Sealing Motion, and (2) should grant the Summary Judgment Motion.

<u>**BACKGROUND**</u>

Plaintiff, a pro se litigant, initiated this action against Defendants pursuant to 42 U.S.C. § 1983 for their alleged violation of his fourth-amendment rights. In particular, Plaintiff contends that Defendants used excessive force against him during an interaction on March 16, 2014. (<u>See</u> Docket Entry 2 (the "Complaint") at 4, 5.)[2] According to the Complaint:

_____

2 Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

2

On March 16, 2014, Plaintiff "was parked at the gravel pit awaiting [two women] to give them $10 for gas." (<u>Id.</u> at 4.) As Plaintiff "wait[ed] for their arrival, Dobson Police Officer Mr. Kenneth James Holbrook approached [Plaintiff and] asked what [he] was doing out there." (<u>Id.</u>) After speaking with Holbrook, Plaintiff returned to his car, and, "[u]nkowingly, Mr. Holbrook retrieved his flashlight [and likewise] approached" Plaintiff's car. (<u>Id.</u>) "Upon noticing a bag, Mr. Holbrook placed [Plaintiff's] left wrist in restraints [and] then slammed [Plaintiff] to the ground. He then placed his knee in [Plaintiff's] back [and] placed [Plaintiff's] right wrist in restraints behind [him]." (<u>Id.</u>) "Holbrook then called dispatch for back-up," and "Deput[ies] Jason White, Brad Cook[, and] Travis Bowman arrived on the scene." (<u>Id.</u>) "The officers started asking [Plaintiff] questions [and he] refused to respond." (<u>Id.</u>) "This is when the officers started choking [Plaintiff], placing their fingers around [his] jaw, slamm[ing him] on the trunk of a car face first[,] and started raising [his] restrained hands well beyond [their] normal range of motion, punching [him] in [his] back [and] ribs." (<u>Id.</u>) These events caused Plaintiff to develop "acute chronic back disorder," "sciatic nerve damage, [a] pinched nerve, bone spurs in [his] neck[, and] a possible bulging disc," as well as "extreme emotional distress," all requiring medical attention. (<u>Id.</u> at 4, 5.) "[W]hen the officials punched, choked, [and] kicked

[Plaintiff], leaving [him] with minor bruises, swelling of face throat [and] loose/chipped teeth[, and] severe injuries," they acted with "excessive force" in violation of the United States Constitution. (<u>Id.</u> at 5.)

Defendants moved to dismiss the Complaint on statute of limitations grounds. (<u>See</u> Docket Entry 16 at 4, 5.) The Court (per United States District Judge Loretta C. Biggs) denied that motion (<u>see</u> Docket Entry 40 at 1) and thereafter (per the undersigned) issued a Scheduling Order for this action (<u>see</u> Text Order dated Oct. 19, 2017). The Scheduling Order established a discovery deadline of April 20, 2018, and specified a deadline of December 20, 2017, for seeking leave to amend the pleadings. (<u>See id.</u>) On April 12, 2018, Plaintiff submitted a request for "subpoenas to file with the Surry County Sheriff's Dept. and the Dobson Police Dept." for, <u>inter alia</u>, "[v]ideo surveillance cameras of cruisers involved in [the] incident on March 16, 2014[,] involving [Defendants]." (Docket Entry 53 at 1.) The Court denied that motion, explaining that

> Plaintiff waited until only eight days remained in the (six-month) discovery period to request issuance of these subpoenas. By that late date, little chance existed that issuance and service of the subpoenas could occur before the close of discovery and, under no circumstances, could the subpoenas simultaneously have permitted the non-parties a reasonable time to respond and have required a response by the close of discovery.

(Docket Entry 56 (the "Order") at 2.) The Court similarly denied Defendants' motion to unseal certain medical records produced "in

4

response to a subpoena served by Defendants on [a] non-party on or after April 20, 2018 (the date of the subpoena's issuance)" (Docket Entry 58 at 1), on the grounds that "Defendants did not make adequate provisions for production of these medical records within the discovery period" (id. at 2).

Defendants subsequently moved for summary judgment. (See Docket Entry 61.) In conjunction with their Summary Judgment Motion, Defendants filed their First Sealing Motion, asking "for an order to seal the unredacted Memorandum of Law in Support of Defendants' [Summary Judgment] Motion" as well as "Exhibit D to its [Summary Judgment] Motion." (Docket Entry 64 at 1.) Plaintiff filed various responses in opposition to the Summary Judgment Motion (see, e.g., Docket Entries 72-78), as well as the Discovery Motion (Docket Entry 71) and Reconsideration Motion (Docket Entry 79). In response, Defendants filed, inter alia, their First Strike Motion (Docket Entry 81) and their Second Sealing Motion (Docket Entry 85), which seeks "an order to seal the unredacted Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment [(the "Reply")] and Accompanying Affidavits, Exhibit A to its Reply, Exhibit B to its Reply, and Exhibit C to its Reply" (id. at 1). Thereafter, Plaintiff filed his Eighth Amendment Motion (Docket Entry 89), and Defendants filed their Second Strike Motion, which seeks to strike Plaintiff's Eighth Amendment Motion (see Docket Entry 90 at 1).

## DISCUSSION

### I. Motions to Strike

As an initial matter, Defendants move to strike certain of Plaintiff's motions. In particular, the First Strike Motion seeks, "pursuant to Rule 12(f)(2) of the Federal Rules of Civil Procedure" (the "Rules") (Docket Entry 81 at 1), to strike Plaintiff's Discovery Motion and its attachments, as well as an earlier iteration of Plaintiff's Reconsideration Motion (compare Docket Entry 70, with Docket Entry 79). (See Docket Entry 81 at 1.) In addition, the Second Strike Motion asks the Court, also pursuant to Rule 12(f)(2), to strike Plaintiff's Eighth Amendment Motion. (See Docket Entry 90 at 1.)

Rule 12(f) authorizes the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Rule 7(a) identifies which documents qualify as pleadings in federal cases. JHRG LLC v. StormWatch, Inc., No. 1:09cv919, 2011 WL 3111971, at *5 (M.D.N.C. July 26, 2011); see also General Tire & Rubber Co. v. Watkins, 331 F.2d 192, 195–96 (4th Cir. 1964) (analyzing whether filing constituted "a pleading within the meaning of [the] Rule[s]" by reference to Rule 7(a), which "defines pleadings"). Under Rule 7(a), the complaint; any third-party complaint; answers to (1) such complaints, (2) any crossclaims, and (3) any counterclaims; and, "if the [C]ourt orders one, a reply to

an answer," constitute the pleadings. Fed. R. Civ. P. 7(a). This definition does not include motions (or discovery requests). Accordingly, the Court will deny the Motions to Strike.

## II. Discovery Motion

Next, the Discovery Motion seeks (1) the Court's "assistance in locating two (2) witnesses" so that Plaintiff may obtain their "declarations," as well as (2) "any other just order(s)." (Docket Entry 71 at 1.) Plaintiff filed the Discovery Motion after discovery closed. (Compare id. (bearing date of June 3, 2018), with Text Order dated Oct. 19, 2017 (establishing discovery deadline of April 20, 2018).) As such, the Discovery Motion necessarily seeks, in part, a "just order[]" extending the discovery deadline. (Docket Entry 71 at 1.) Under this Court's Local Rules, however,

> [m]otions seeking an extension of the discovery period . . . must be made or presented prior to the expiration of the time within which discovery is required to be completed. They must set forth good cause justifying the additional time and will be granted or approved only upon a showing that the parties have diligently pursued discovery.

M.D.N.C. LR 26.1(d).

The Discovery Motion fails to satisfy these requirements. More specifically, the Discovery Motion not only qualifies as untimely, but also fails to either "set forth good cause justifying the additional time" or "show[] that [Plaintiff] ha[s] diligently

pursued discovery," id. (See Docket Entry 71.) Under these circumstances, the Court will deny the Discovery Motion.

**III. Reconsideration Motion**

Plaintiff additionally seeks "reconsideration" of the Court's Order regarding "video surveillance from the cruisers involved in the" altercation between Plaintiff and Defendants on March 16, 2014. (Docket Entry 79 at 2.)[3] An order that resolves "fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a [final] judgment." Fed. R. Civ. P. 54(b). The power to reconsider such orders "is committed to the discretion of the district court." American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003). Furthermore, although the Rules "do not set out any standard for reconsideration of interlocutory orders," federal courts generally "adhere[] to a fairly narrow set of grounds on which to reconsider their interlocutory orders." Akeva, L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005). More specifically, "[c]ourts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not

---

3 In an apparent typographical error, the Reconsideration Motion technically requests an "order releasing video surveillance from the cruisers involved in the day/night of the incident March 16, 2018 [sic] A.D." (Id.)

previously available; or (3) the prior decision was based on clear error or would work manifest injustice." Id. at 566.

The Reconsideration Motion identifies no change in law or previously unavailable evidence. Instead, it maintains that "[t]his evidence production or non-production weighs heavily upon [D]efendants['] unlawfulness of their duties unbecoming of an officer." (Docket Entry 79 at 2.) This contention fails to justify Rule 54(b) relief. First, the proposed evidence's potential significance does not excuse Plaintiff's failure to timely request this material during the discovery period. See M.D.N.C. LR. 26.1(c) ("The requirement that discovery be completed within a specified time means that adequate provisions must be made for interrogatories and requests for admission to be answered, for documents to be produced, and for depositions to be held within the discovery period."). Second, Defendants aver that "[t]here is no dash cam or body cam video footage of the incident." (Docket Entry 61-1, ¶ 37; accord Docket Entry 61-3, ¶ 20 ("There is no dash cam or body cam video footage of the arrest.").) Thus, reconsidering the Order would produce no benefit for Plaintiff. Under these circumstances, the Court will exercise its discretion to deny the Reconsideration Motion.

### IV. Eighth Amendment Motion

Finally, Plaintiff pursues his Eighth Amendment Motion; however, the nature of this motion remains unclear. Plaintiff

begins the Eighth Amendment Motion by reciting various legal principles, including regarding the "Eighth Amendment" (Docket Entry 89 at 1-3), before stating:

> Plaintiff did comply with initial officers [sic] request; however, once on the ground [and] placed in restraints [P]laintiff had a constitutional right not to engage in verbal and/or physical compliance. Plaintiff assumed he was being placed under arrest once restraints placed on his wrists behind his back. Plaintiff also assumed he was going to be placed in the back of the cruiser; however, this never occurred by any of the [D]efendants.

<u>Conclusion</u>

> Wherefore, the Plaintiff respectfully request that the Court grant the Plaintiffs [sic] Motion for Eighth Amendment Violation along with relief as previously requested, injunctive relief so such never happens again, and any further relief the Court deems just and proper.

(<u>Id.</u> at 3 (underlining and indentation in original).) Thereafter, in his reply in support of the Eighth Amendment Motion, Plaintiff "respectfully request[s] that the Court grant [his] Motion for Eighth Amendment violation with Medical Records from Hugh Chatham Memorial Hospital because Attorneys for Defendants have previously stated records didn't show injuries conclusive of the night of the injuries; however, records prove (show) otherwise." (Docket Entry 92 at 7.)

In light of this reply, Plaintiff's Eighth Amendment Motion apparently opposes Defendants' Summary Judgment Motion, which relies, in part, on the argument that "Plaintiff did not suffer serious injury as a result of any actions by the Defendants"

(Docket Entry 62 at 11). This Court's Local Rules permit a party opposing a motion for summary judgment to "file a response" within "30 days." M.D.N.C. LR 7.3(f) (emphasis added). The Local Rules further authorize the filing, within seven days, of a "surreply memorandum" solely to address "an evidentiary objection . . . raised by the moving party in its reply." M.D.N.C. LR 7.6. Here, Plaintiff filed multiple responses to the Summary Judgment Motion (see, e.g., Docket Entries 72-78, 88), and waited for nearly three weeks after Defendants filed their Reply (and more than fifty days after they filed the Summary Judgment Motion) to submit the Eighth Amendment Motion (compare Docket Entry 89 at 3 (bearing signature date of July 10, 2018), with Docket Entry 83 at 5 (bearing filing date of June 21, 2018), and Docket Entry 61 at 1 (bearing filing date of May 18, 2018)). Accordingly, to the extent that the Eighth Amendment Motion constitutes an attempt to further oppose the Summary Judgment Motion, the Court will deny it for failure to comply with this Court's Local Rules. See M.D.N.C. LR 83.4(a) (authorizing the Court to "make such orders as are just under the circumstances" when "a party fails to comply with a [L]ocal [R]ule," including "an order refusing to allow the failing party to . . . oppose designated . . . defenses, or prohibiting the party from introducing designated matters in evidence").

Alternatively, to the extent that Plaintiff seeks to amend his Complaint via the Eighth Amendment Motion, that effort fails as

well.  The Scheduling Order established December 20, 2017, as the deadline for "fil[ing] any motion seeking leave to amend pleadings." (Text Order dated Oct. 19, 2017.)  Plaintiff submitted the Eighth Amendment Motion on July 10, 2018. (See Docket Entry 89 at 3.)  Because Plaintiff filed his Eighth Amendment Motion after the Scheduling Order's deadline for motions to amend, he must establish "excusable neglect" to receive relief.  See Fed. R. Civ. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time[] . . . on motion made after the time has expired if the party failed to act because of excusable neglect.").  "'Excusable neglect' is not easily demonstrated, nor was it intended to be," Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996), and the Eighth Amendment Motion provides no grounds for finding excusable neglect here (see Docket Entry 89 at 1-3).

Moreover, even if the Court overlooked the Eighth Amendment Motion's untimely nature, it would still fall short.  Because Defendants oppose the Eighth Amendment Motion (see Docket Entry 90 at 1), Plaintiff "may amend [his] pleading only with . . . the [C]ourt's leave."  Fed. R. Civ. P. 15(a)(2).  In considering whether to grant such leave, the Court must consider whether "the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks omitted).  Here, Plaintiff complains of Defendants' actions prior to his

incarceration. (See generally Docket Entry 2.) The United States Supreme Court has held that "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original). Accordingly, any attempt to add a claim under the Eighth Amendment in the context of this case qualifies as futile. Therefore, to the extent that the Eighth Amendment Motion constitutes a motion for leave to amend the Complaint, it fails for futility.

Under the circumstances, the Court will deny Plaintiff's Eighth Amendment Motion.[4]

## V. Summary Judgment Motion

### A. Relevant Standards

Having disposed of the preliminary motions, the analysis now turns to Defendants' Summary Judgment Motion. "The [C]ourt shall

---

4 For the reasons stated in Deberry v. Davis, No. 1:08cv582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010), the undersigned Magistrate Judge will enter an order, rather than a recommendation, as to the Eighth Amendment Motion, including as to any request to amend Plaintiff's pleadings. See also Everett v. Prison Health Servs., 412 F. App'x 604, 605 & n.2 (4th Cir. 2011) (explaining that, where the plaintiff "moved for leave to amend her complaint," "the magistrate judge denied [that] motion," and the plaintiff "timely objected," the district court "could not modify or set aside any portion of the magistrate judge's order unless the magistrate judge's decision was 'clearly erroneous or contrary to law'" (citing 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a))).

grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'" Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)). If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment." Anderson, 477 U.S. at 248. Moreover, "the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Lewis v. Eagleton, 4:08-cv-2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (citing Baber v. Hospital Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992)), aff'd, 404 F. App'x 740 (4th Cir. 2010); see also Pronin v. Johnson, 628 F. App'x 160, 161 (4th Cir. 2015) (explaining that "[m]ere conclusory allegations and bare denials" or the nonmoving party's "self-serving allegations unsupported by any corroborating evidence" cannot defeat summary judgment). Finally, factual allegations in a complaint or court filing constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury. See Reeves v. Hubbard, No. 1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

Defendants seek summary judgment, in part, on the basis of qualified immunity. (See Docket Entry 62 at 13-15.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S.

223, 231 (2009) (internal quotation marks omitted).[5] "The protection extends to all but the plainly incompetent or those who knowingly violate the law." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015) (internal quotation marks omitted). Under this doctrine, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Id. (internal quotation marks omitted) (brackets in original).

In evaluating qualified immunity, courts consider "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the

_____

5    In addition to monetary damages, the Complaint also requests declaratory and injunctive relief. (See Docket Entry 2 at 6 ("Affiant seeks declaration that the acts [and] omissions described herein violate his rights under the Constitution [and] laws of the United States, [and] preliminary [and] permanent injunction ordering agencies and/or defendants involved to cease their physical violence/threats toward affiant . . . .").) However, "[t]o obtain prospective relief, such as a declaratory judgment or an injunction, a plaintiff must show, inter alia, 'a sufficient likelihood that he . . . will again be wronged in a similar way.'" Marcavage v. City of New York, 689 F.3d 98, 103 (2d Cir. 2012) (emphasis in original) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)). Moreover, "[i]n establishing a certainly impending future injury, a plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." Id. (citing Whitmore v. Arkansas, 495 U.S. 149, 158-59 (1990), Lyons, 461 U.S. at 102-03, and O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). The Complaint pertains solely to events occurring on March 16, 2014, with no factual allegations to support a conclusion that, after that date, Defendants continued to engage in "physical violence/threats toward [Plaintiff]" (Docket Entry 2 at 6). (See id. at 4, 5.) As such, Plaintiff cannot obtain injunctive or declaratory relief in this action, rendering monetary damages the only potential relief Plaintiff could obtain against Defendants.

time of the alleged violation." Id. The Court may address these prongs in whatever order "will best facilitate the fair and efficient disposition of [this] case." Pearson, 555 U.S. at 242. Here, consideration of the latter prong first appears appropriate. See id. at 237 (recognizing propriety of initial consideration of the latter prong in "cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right").

A right qualifies as "clearly established . . . [if] it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled in part on other grounds, Pearson, 555 U.S. at 227. In other words, "[t]he unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).

In ascertaining whether a right had become clearly established at the time of the challenged conduct, courts within this circuit generally "need not look beyond the decisions of the Supreme Court,

th[e Fourth Circuit C]ourt of [A]ppeals, and the highest court of the state in which the case arose." Edwards, 178 F.3d at 251 (internal quotation marks omitted). However, in the absence of controlling precedent, a right may qualify as clearly established (1) if it appears "manifestly included within more general applications of the core constitutional principles invoked" or (2) based on "a consensus of cases of persuasive authority from other jurisdictions." Booker v. South Carolina Dep't of Corr., 855 F.3d 533, 538-39 (4th Cir. 2017) (emphasis and internal quotation marks omitted). Conversely, in the absence of controlling authority, decisions from other jurisdictions that decline to find constitutional violations in similar circumstances can justify application of qualified immunity. See Pearson, 555 U.S. at 244-45; see also Booker, 855 F.3d at 539.

Plaintiff alleges that Defendants used excessive force against him in the course of an investigatory encounter on March 16, 2014. (See Docket Entry 2 at 4, 5.) "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment," Graham, 490 U.S. at 395, which protects individuals "against unreasonable . . . seizures" of their "person[]," U.S. CONST. amend. IV. As the Supreme Court has explained:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth

> Amendment requires a careful balancing of the nature and
> quality of the intrusion on the individual's Fourth
> Amendment interests against the countervailing
> governmental interests at stake. Our Fourth Amendment
> jurisprudence has long recognized that the right to make
> an arrest or investigatory stop necessarily carries with
> it the right to use some degree of physical coercion or
> threat thereof to effect it. Because the test of
> reasonableness under the Fourth Amendment is not capable
> of precise definition or mechanical application, however,
> its proper application requires careful attention to the
> facts and circumstances of each particular case,
> including the severity of the crime at issue, whether the
> suspect poses an immediate threat to the safety of the
> officers or others, and whether he is actively resisting
> arrest or attempting to evade arrest by flight.

Graham, 490 U.S. at 396 (brackets, citations, and certain internal

quotation marks omitted).

Moreover, "[t]he 'reasonableness' of a particular use of force

must be judged from the perspective of a reasonable officer on the

scene, rather than with the 20/20 vision of hindsight." Id. In

evaluating the reasonableness of a use of force, the Court must

also "allow[] for the fact that police officers are often forced to

make split-second judgments — in circumstances that are tense,

uncertain, and rapidly evolving — about the amount of force that is

necessary in a particular situation," id. at 397. See id. at 396-

97. Nevertheless, "the 'reasonableness' inquiry in an excessive

force case is an objective one: the question is whether the

officers' actions are 'objectively reasonable' in light of the

facts and circumstances confronting them, without regard to their

underlying intent or motivation." Id. at 397.

## B. Relevant Facts

As relevant to this inquiry, the record[6] reflects the following:

On the night of March 16, 2014, Holbrook, an officer with the Surry County Sheriff's Office, "was assisting [the] Dobson Police Department by filling in for a police officer" on patrol. (Docket Entry 61-1, ¶ 3.) "As part of [his] patrol, [Holbrook] was driving a marked Dobson Police patrol vehicle through the area where Plaintiff was parked. [Holbrook] routinely check[s] the convenience stores in this area while they are open as there was a robbery, shooting, and murder [t]here a few years prior to this incident." (Id., ¶ 4.) "Plaintiff was parked in a very back corner parking space of the Kangaroo Express convenience store

---

6 Plaintiff submitted multiple purported "affidavits" (see, e.g., Docket Entries 75, 76) and other memoranda in opposition to the Summary Judgment Motion (see, e.g., Docket Entries 74, 88, 94, 95). "[A]n affidavit, by definition, is a statement reduced to writing and the truth of which is *sworn* to before someone who is authorized to administer an oath." Elder-Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006) (emphasis in original) (internal quotation marks omitted). Plaintiff's affidavits, memoranda, and Complaint lack any indication that he swore to their truth before someone authorized to administer oaths. (See generally Docket Entries 2, 73-78, 94, 95.) Nor did Plaintiff attest to the contents of these documents "as true under penalty of perjury," as permitted under 28 U.S.C. § 1746, see Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988) (explaining that Section 1746 "permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct'"). (See generally Docket Entries 2, 73-78, 94, 95.) Accordingly, Plaintiff's unsworn documents do not constitute evidence for summary judgment purposes. See In re French, 499 F.3d 345, 358 (4th Cir. 2007) (Whitney, J., concurring); Reeves, 2011 WL 4499099, at *5 n.14.

parking lot." (Id., ¶ 5.) Holbrook "went across the road to check on some [closed] businesses" (id., ¶ 6), and, when he returned, "Plaintiff's vehicle was still in the same parking space" (id., ¶ 7). Holbrook "watched Plaintiff from [Holbrook's] vehicle" (id.) and when, "[a]fter about ten minutes, Plaintiff started his vehicle and went west on Zephyr Road toward Elkin" (id., ¶ 8), Holbrook "headed in the same direction as Plaintiff" (id., ¶ 9). "As [Holbrook] was turning around in a gravel lot located at Interstate 77 and Zephyr Road, [he] spotted Plaintiff's vehicle backed into a parking space next to an unoccupied vehicle." (Id., ¶ 10.)

Holbrook "stopped [his] patrol car near where Plaintiff was parked, got out of [his] car and approached Plaintiff." (Id., ¶ 11.) Holbrook "asked what [Plaintiff] was doing and if he had any identification. Plaintiff told [Holbrook] he was meeting someone that needed gas and that he did not have a license or any other form of identification" (id., ¶ 12), but "Plaintiff identified himself as Jose France" (id., ¶ 13). "[A]s a safety precaution to make sure [Holbrook] could see Plaintiff's hands" and to aid in Plaintiff's search for identification, Holbrook shone his flashlight into Plaintiff's car. (Id., ¶ 14.) "When [he] shined the light into Plaintiff's vehicle, [Holbrook] saw a white substance in a bag or some type of wrapping on the center console in plain sight," which, based on Holbrook's experience with drug-related crimes, "appeared to be cocaine or methamphetamine.

[Holbrook] asked Plaintiff what the substance was." (<u>Id.</u>, ¶ 15.)

"[A]s soon as [Holbrook] asked Plaintiff what the substance was, [Plaintiff] grabbed it in his right hand and shoved his hand underneath his seat between the center console and the seat." (<u>Id.</u>, ¶ 16.)

> Knowing that people sometimes keep weapons between their seat and center console, [Holbrook] was afraid Plaintiff might have a weapon, especially considering this area was an area where violent crimes including gun-related crimes had occurred in the past. [Holbrook] could not see the location where Plaintiff shoved his hand, and therefore could not confirm whether or not Plaintiff had a weapon. Plaintiff was moving his hand in such a way that [Holbrook] feared he was looking for a weapon between or under the seat.

> At that point, [7 Holbrook] opened Plaintiff's driver side door, grabbed Plaintiff's left arm and removed him from his vehicle. Plaintiff went directly to the ground and his right hand went towards his face. Plaintiff attempted to hit and kick [Holbrook] as [Holbrook] pulled him out of the car and continued to struggle even once handcuffs were placed on him. [Holbrook] placed Plaintiff in handcuffs and requested backup from [Holbrook's] portable radio on [his] person. [Holbrook] called for backup because [he] had concerns as to whether [he] could maintain control of [Plaintiff] due to his resistance without other officers, even with his handcuffs in place, as he continued to attempt to kick [Holbrook].

> [Holbrook] asked Plaintiff what he did with the drugs but he did not respond.

---

7 Although not mentioned in Holbrook's affidavit, his incident reports regarding this event, and the factual basis supporting Plaintiff's subsequent guilty plea, state that Holbrook instructed Plaintiff to show Holbrook his hands while Holbrook opened the car door and removed Plaintiff from the vehicle. (Docket Entry 61-1 at 9, 15; Docket Entry 61-4 at 77.)

Shortly thereafter, Officer Jason White arrived on scene. [Holbrook] asked Officer White to assist with securing Plaintiff and watch Plaintiff while [Holbrook] returned to [Plaintiff's] vehicle to search for the drugs in the area between the center console and the driver's seat. [Holbrook] advised Officer White that Plaintiff may have put the drugs in his mouth.

(Id., ¶¶ 17-20 (paragraph numbers omitted).)

Based on prior encounters, White "immediately recognized Plaintiff." (Docket Entry 61-3, ¶ 5.)[8] While Holbrook searched Plaintiff's vehicle (see Docket Entry 61-1, ¶ 21), "Plaintiff began to talk loudly," and White "noticed that Plaintiff was mumbling and appeared to have something in his mouth. [White] asked Plaintiff to open his mouth and he complied, revealing a large amount of white substance lodged to the left side of his mouth between his gums and teeth." (Docket Entry 61-3, ¶ 8.) "The substance appeared to be cocaine." (Id., ¶ 9.)

> [White] told Officer Holbrook that [White] had located the contraband in Plaintiff's mouth. Officer Holbrook and [White] walked Plaintiff to the back of [White's] patrol vehicle and told him to spit the substance out. Plaintiff began to bend at his waist and twist his body in an attempt to kick [White] and Officer Holbrook. To prevent Plaintiff from doing so, [White] performed a quick closed hand strike to [Plaintiff's] back to place him back against the patrol car.

---

8    Bowman likewise recognized Plaintiff from previous encounters during Plaintiff's incarceration at the Surry County Jail, where Bowman previously worked. (Docket Entry 61-5, ¶¶ 12, 14.) "On multiple occasions, Plaintiff had attempted to actively resist arrest or pull away from [Bowman] while in custody." (Id., ¶ 13.) Thus, "[w]hen [Bowman] heard Plaintiff's name on the radio, [he] knew [his] fellow officers would need backup based on [his] prior experiences with Plaintiff, so [he] went to assist them." (Id., ¶ 14.)

23

> Officer Holbrook and [White] asked Plaintiff several
> times to spit out the contraband.  He continued to
> refuse.  The amount of substance in his mouth based on
> [White's]  experience  with  overdoses  in  [White's]
> profession would be enough to cause serious injury to
> Plaintiff so [Holbrook and White] applied pressure to the
> side of Plaintiff's jaw using the mandibular angle in an
> attempt to remove the drugs from his mouth.  The pressure
> point appeared to have no impact.

(Id., ¶¶ 10, 11 (paragraph numbers omitted); see also Docket Entry

61-1, ¶¶ 21-25 (explaining, inter alia, that, while "Plaintiff was

still struggling with" Holbrook and White "in [an] attempt to kick

or  hit  [them]  with  his  head,"  Holbrook  "attempted  to  open

Plaintiff's mouth by pushing on his chin").)

Additional officers, including Cook and Bowman, arrived on the

scene,  and  "Officer  Cook  and  Officer  Bowman  relieved  Officer

Holbrook and [White] from holding Plaintiff."  (Docket Entry 61-3,

¶ 12.)  "Plaintiff still had his teeth clinched and was refusing to

remove the substance from inside his mouth."  (Id., ¶ 13.)  White

and Holbrook "attempted to open Plaintiff's mouth by pulling his

chin down while simultaneously pulling on his upper jaw.  [White]

was  able  to  see  the  large  amount  of  contraband  still  between

Plaintiff's jaw and teeth."  (Id.)

> Plaintiff began to push away from the patrol car
> using his body and was trying to kick back at Officer
> Bowman and Officer Cook.  To protect [Officer White],
> Officer Cooke [sic] and Officer Bowman from injury and
> harm, Officer Bowman performed a closed hand strike to
> Plaintiff's back to get him against the patrol car and
> regain control.

(Id., ¶ 14.)

"At this time, [White] noticed what appeared to be white granular particles scattered across the trunk of [his] patrol car and rear window."  (Id., ¶ 15.)  "As Officer Bowman and Officer Cook continued to try to get the drugs out of Plaintiff's mouth, Officer White and [Officer Holbrook] collected the granulars Plaintiff had spit out on Officer White's vehicle.  [They] field tested the granulars and they tested positive for cocaine."  (Docket Entry 61-1, ¶ 27.)  White "again asked Plaintiff to spit out the cocaine, but he refused.  [White] explained to him that if he were to swallow that much cocaine, it could kill him or get lodged in his throat.  Plaintiff still refused."  (Docket Entry 61-3, ¶ 16.)  "Plaintiff began coughing and acting like he was choking or about the throw up.  [White] asked Plaintiff to open his mouth and he complied.  [White] could see that the cocaine was gone.  [Plaintiff] still had a trace amount on his teeth, jaw, and in the comer of his lips."  (Id., ¶ 17.)  "The entire struggle lasted approximately 4 to 5 minutes."  (Docket Entry 61-1, ¶ 28.)

Thereafter, "Plaintiff stated that he was having trouble breathing so" White called for the Emergency Medical Services ("EMS").  (Docket Entry 61-3, ¶ 18.)  "Surry County EMS arrived and hooked Plaintiff up to an EKG heart rate monitor.  His heart rate was really high and climbing.  Plaintiff was uncuffed and transported to Hugh Chatham Hospital.  [The officers] were notified that Plaintiff's blood tested positive for cocaine."  (Id.)  "After

EMS left the scene, [White] noticed that the paint on the trunk lid of [his] patrol car and [his] rear tail light were damaged during the struggle." (Id., ¶ 19.) Also after EMS transported Plaintiff from the scene, Holbrook obtained warrants for Plaintiff's arrest and Plaintiff "was subsequently arrested." (Docket Entry 61-1, ¶ 32.) The charges against Plaintiff included felony possession of cocaine (id. at 24), felony maintaining a vehicle dwelling or place for controlled substance (id. at 25), and misdemeanor resisting a public officer (id. at 26). In addition, "[t]he granulars collected from the deck lid of Officer White's vehicle were sent to the State Bureau of Investigation lab for testing. It was confirmed that the substance was cocaine." (Id., ¶ 34.) Plaintiff subsequently pleaded guilty to the controlled substance felonies. (See Docket Entry 61-4 at 69-72, 80.)

**C. Analysis**

On such record, the Graham factors weigh in Defendants' favor. As to the first factor, the "severity of the suspected crime, at the time [Holbrook] grabbed [Plaintiff's] arm" to pull him from the car, he "had reason to suspect that [Plaintiff] may be guilty of [possessing a controlled substance]," Smith v. Ray, 781 F.3d 95, 102 (4th Cir. 2015), specifically cocaine or methamphetamine. (See Docket Entry 61-1, ¶¶ 15-18.) Possession of cocaine or methamphetamine constitutes a felony under North Carolina law. See N.C. Gen. Stat. § 90-95(d)(2). During the ensuing scuffle,

Defendants confirmed this suspicion when pieces of the substance that fell from Plaintiff's mouth field-tested positive for cocaine. (See Docket Entry 61-1, ¶ 27; Docket Entry 61-3, ¶ 15.)

The second Graham factor, "whether the suspect poses an immediate threat to the safety of the officers or others," Smith, 781 F.3d at 102, likewise weighs in Defendants' favor. When Holbrook pulled Plaintiff from the car, Plaintiff had (1) grabbed an apparent controlled substance off the car's center console in response to Holbrook's query regarding the substance and (2) hidden it beneath "his seat between the center console and the seat" (Docket Entry 61-1, ¶ 16), a location where "people sometimes keep weapons" (id., ¶ 17). (See id., ¶¶ 15-17.) Holbrook "could not see the location where Plaintiff shoved his hand" to confirm if Plaintiff possessed a weapon, but Plaintiff "was moving his hand in such a way that [Holbrook] feared he was looking for a weapon between or under the seat." (Id., ¶ 17; see also id. (noting that "this area was an area where violent crimes including gun-related crimes had occurred in the past").) Under these circumstances, Plaintiff posed a threat to Holbrook's safety. In addition, because he was attempting to kick various Defendants when White and Bowman performed their "closed hand strike[s]" against him, Plaintiff likewise posed a threat to the officers when they struck him. (Docket Entry 61-3, ¶¶ 10, 14.) Finally, when Defendants applied pressure to Plaintiff's jaw after he refused their repeated

requests to spit out the cocaine, Plaintiff "posed an immediate threat of serious harm to himself" and "some degree of force [was] reasonably necessary to ameliorate th[at] immediate threat." Estate of Hill by Hill v. Miracle, 853 F.3d 306, 314 (6th Cir. 2017) (adopting Graham test to medical emergency context).

The final Graham factor, "whether the suspect was actively resisting arrest or attempting to evade arrest by flight, also [favors Defendants]." Smith, 781 F.3d at 102. First, although the record does not reveal the precise sequence of events, it does establish that "Plaintiff attempted to hit and kick [Holbrook] as [Holbrook] pulled him out of the car." (Docket Entry 61-1, ¶ 18.) It further reflects that Plaintiff "continued to struggle even once handcuffs were placed on him." (Id.) Plaintiff continued struggling, including "attempt[ing] to kick or hit [various Defendants] with his head" (id., ¶ 23) and "kicking and raising off the deck lid of [the police] vehicle" (id., ¶ 25), during all relevant times, ceasing such resistence only after he swallowed the cocaine, at which point Defendants released him (see, e.g., id., ¶ 29 ("At some point, Plaintiff relaxed and [Defendants] knew that Plaintiff had swallowed the drugs. As soon as Plaintiff stopped struggling, he was released.")). (See also, e.g., Docket Entry 61-3, ¶¶ 10-14.)[9]

---

    9  For such conduct, Plaintiff incurred a charge of resisting public officer.  (See Docket Entry 61-1 at 26.)

Under such circumstances, one "cannot say that [Defendants] violated a clearly established right when," German v. Sosa, 399 F. App'x 554, 557 (11th Cir. 2010), they pulled Plaintiff from the car, attempted — after ineffective verbal commands to spit out the drugs — to retrieve the cocaine from his mouth by pressing on his jaw, and performed two closed hand strikes to control a "violently" (Docket Entry 61-1, ¶ 25) resisting individual. Plaintiff has not identified (see generally Docket Entries 74-78, 88, 94, 95), and the undersigned has not located, any Supreme Court, Fourth Circuit, or North Carolina Supreme Court decision that "'squarely governs' the facts here," Mullenix v. Luna, __ U.S. __, __, 136 S. Ct. 305, 310 (2015).[10] However, prior to this incident, the Fourth Circuit

---

[10] In this regard, it bears noting that "[t]he case at hand implicates [two] legitimate governmental interests: preventing a potential drug overdose and preserving evidence." Pennington v. Terry, 644 F. App'x 533, 546 (6th Cir. 2016). Although Defendants focus solely on the first interest (see, e.g., Docket Entry 61-1, ¶¶ 23, 24; Docket Entry 61-3, ¶¶ 11, 16; Docket Entry 62 at 3, 4, 15),

> the standard for excessive force is objective — that is, whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. The clearly established analysis is also objective — whether every reasonable official would have understood that what he is doing violates that right. As a result, the officers' subjective belief that [Plaintiff] might be in physical danger from ingesting the drugs does not affect [the Court's] analysis as to whether a reasonable officer in [Defendants'] situation would have known that [their actions] violated a clearly established right.

Pennington, 644 F. App'x at 546 n.8 (citations, emphasis, and
(continued...)

had held that an officer's "attempt to grab [a plaintiff's] keys and pull him from the almost-stationary truck to prevent him from driving off after he had refused to provide [the officer] the requested identification . . . did not violate [the plaintiff's] constitutional rights." Foote v. Dunagan, 33 F.3d 445, 449 (4th Cir. 1994). Further, the North Carolina Court of Appeals had twice declined to find a fourth-amendment violation justifying suppression of evidence where an officer, who reasonably believed an individual "was attempting to swallow illegal drugs," either (1) "grabbed [the] defendant around the throat, pushed him on the hood of the vehicle, . . . demanded he spit out whatever he was attempting to swallow," and "threaten[ed] to use the taser" or (2) "'grabbed [the] defendant by the back of his jacket and told him to spit out the drugs,' applied pressure to the defendant's throat, and 'told [the] defendant not to swallow or the drugs would kill [the] defendant.'" State v. Williams, 209 N.C. App. 255, 260-61, 266-68, 703 S.E.2d 905, 909, 912-14 (2011) (brackets and certain internal quotation marks omitted) (quoting State v. Watson, 119 N.C. App. 395, 396, 458 S.E.2d 519, 521 (1995)).

In addition, federal courts have often — although not in all situations — upheld the use of force to prevent the destruction of evidence or "neutralize a safety threat to the plaintiff himself,"

---

10(...continued)
internal quotation marks omitted).

_Pennington v. Terry_, 644 F. App'x 533, 544 (6th Cir. 2016).

_See_ _id._ at 544-46 (collecting and analyzing cases). Of particular relevance here, the Court of Appeals for the Fifth Circuit declined to find a constitutional violation where "federal officers obtained [narcotics] from the defendant's mouth as he was attempting to swallow and destroy it by grabbing the defendant about the throat, choking him and attempting to pry open his mouth by placing pressure against his jaw and nose," _Espinoza v. United States_, 278 F.2d 802, 803 (5th Cir. 1960). _See_ _id._ at 804. Thereafter, the Court of Appeals for the Eleventh Circuit concluded that an officer "did not use excessive force when he attempted to prevent [a plaintiff] from swallowing what [the officer] believed to be cannabis" by means of "putting his hand around [the plaintiff's] throat and slamming him against the car." _German_, 399 F. App'x at 557 (brackets and internal quotation marks omitted). Finally, the Court of Appeals for the Sixth Circuit has "h[e]ld that it was not clearly established as of March 2, 2012[,] that tasing an arrestee attempting to swallow illegally possessed drugs constituted excessive force," _Pennington_, 644 F. App'x at 547.

Accordingly, because one cannot "say that in the light of pre-existing law the unlawfulness [of Defendants' actions was] apparent," _Creighton_, 483 U.S. at 640, qualified immunity protects

Defendants from Plaintiff's excessive force claim.  Therefore, the Court should grant Defendants' Summary Judgment Motion.[11]

### VI. Motions to Seal

Finally, Defendants seek to seal certain exhibits and the unredacted versions of their memoranda in support of the Summary Judgment Motion.  (See Docket Entries 64, 85.)  In both the First Sealing Motion and Second Sealing Motion (collectively, the "Sealing Motions"), Defendants "move[] the Court pursuant to Local Rule 79.2 for an order to seal" these filings "[f]or reasons essential to the privacy of [P]laintiff."  (Docket Entry 64 at 1; accord Docket Entry 85 at 1.)  More specifically, "Defendants request that all the medical records attached to the [Summary Judgment Motion and Reply] be sealed to protect [Plaintiff's] privacy . . . and the [unredacted summary judgment m]emorandum [and Reply] also be sealed due to [their] discussion of the above[-]mentioned records."  (Docket Entry 65 at 5; Docket Entry 86 at 4.) The Court will deny the Sealing Motions.

As an initial matter, Local Rule 79.2 provides no authorization for the relief that Defendants seek.  See M.D.N.C. LR 79.2 (prohibiting "court personnel . . . from disclosing to any person, without authorization by the Court, information relating to

_____

11  The granting of summary judgment for Defendants on qualified immunity grounds will terminate this case, as the Court previously concluded that Plaintiff had not stated an official capacity claim against Defendants.  (See Docket Entry 43 at 5, recommendation adopted, Docket Entry 45 at 1.)

a case that is not part of the public records of the Court"). Moreover, any documents sought to be filed under seal must qualify as "relevant to a matter before the Court" and "not [be] filed unnecessarily." M.D.N.C. LR 5.4(c). Here, Defendants seek to seal Plaintiff's medical records and arguments in support of the Summary Judgment Motion based on such records. However, as the foregoing analysis of the Summary Judgment Motion reveals, resolution of the Summary Judgment Motion does not require consideration of such matters. Thus, the materials at issue do not meet the requirements for sealing. <u>See</u> <u>id.</u> The Court will therefore deny the Sealing Motions and order these materials stricken from the record. <u>See</u> M.D.N.C. LR 83.4(a).

**CONCLUSION**

Rule 12(f) does not authorize the relief that the Motions to Strike seek. In addition, Plaintiff failed to satisfy the requirements for the Discovery Motion and Reconsideration Motion and, in turn, Defendants failed to satisfy the requirements for the Sealing Motions. The Eighth Amendment Motion also lacks merit. However, Defendants established their entitlement to qualified immunity.

**IT IS THEREFORE ORDERED** that the First Strike Motion (Docket Entry 81), the Second Strike Motion (Docket Entry 90), the Discovery Motion (Docket Entry 71), the Reconsideration Motion (Docket Entry 79), the Eighth Amendment Motion (Docket Entry 89),

the First Sealing Motion (Docket Entry 64), and the Second Sealing Motion (Docket Entry 85) are **DENIED.**

**IT IS FURTHER ORDERED** that the materials Defendants sought to file under seal (Docket Entries 63, 63-1, 84, 84-1, 84-2, 84-3) are **STRICKEN** from the record.  The Clerk is directed to remove these filings from the Docket.

**IT IS RECOMMENDED** that the Court grant the Summary Judgment Motion (Docket Entry 61) and dismiss all claims against Defendants as barred by qualified immunity.

This 15th day of February, 2019.

_/s/ L. Patrick Auld_
**L. Patrick Auld**
**United States Magistrate Judge**
